IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
FORT SMITH DIVISION

SHERRI R. SMITH                                                                                         PLAINTIFF

    v.                                    Civil No. 2:18-cv-02151-PKH-MEF

ANDREW M. SAUL[1], Commissioner,
Social Security Administration                                                                    DEFENDANT

### MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION

Plaintiff, Sherri R. Smith ("Smith"), brings this action under 42 U.S.C. § 405(g), seeking judicial review of a decision of the Commissioner of Social Security Administration ("Commissioner") denying her claim for a period of disability and disability insurance benefits ("DIB") under Title II of the Social Security Act ("the Act"), 42 U.S.C § 423(d)(1)(A).  In this judicial review, the Court must determine whether there is substantial evidence in the administrative record to support the Commissioner's decision.  42 U.S.C. § 405(g).

### I.    Procedural Background

On July 7, 2016, Plaintiff filed this application with an alleged onset date of April 15, 2016, due to heart murmur, hand and feet numbness, high blood pressure, and throat and neck pain.  (ECF No. 11, pp. 25, 222).  Plaintiff was 51 years old at the time of her application, possessed a twelfth-grade education, and had past relevant work ("PRW") experience as a customer service representative/teller and new accounts representative.  (*Id*., pp. 35, 75).  Her application was denied initially on November 4, 2016, and again upon reconsideration on March 20, 2017.  (*Id*., p. 25).  Plaintiff filed a written request for hearing on May 17, 2017, and the hearing was held on

---

[1] On June 4, 2019, the Senate confirmed Andrew M. Saul as the Commissioner of the Social Security Administration, replacing acting Commissioner, Nancy A. Berryhill.

September 5, 2017, before the Hon. Alexis Murdock, Administrative Law Judge ("ALJ"). Plaintiff was present and represented by counsel, David Harp. (*Id*.).

On December 21, 2017, the ALJ found Plaintiff's major depressive disorder, anxiety, panic disorder with agoraphobia, PTSD, osteoarthritis, DDD of the cervical spine, DDD of the lumbar spine, hypertension, chronic tension headaches, TMJ[2], and Eagle's Syndrome[3] or elongated styloid process syndrome to be severe. (*Id*., p. 28). However, her alleged vertigo improved with medication and her foot pain with bunion did not meet the durational requirements for a severe impairment. (*Id*.). The ALJ ultimately concluded Plaintiff did not have an impairment that met or medically equaled the severity of an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1. (*Id*., pp. 28-30). The ALJ then found Plaintiff capable of performing light work, except as follows: "the claimant can understand, remember, and carry out more than simple instructions and tasks, but no complex instructions or tasks; can regulate her emotions, control behavior, and maintain well-being in a work setting with those instructions and tasks, as long as there are no fast-paced production requirements, such as assembly-line work; and can learn and recall in a work setting with those instructions and tasks." (*Id*., p. 30). Although the Plaintiff could not perform her PRW, the ALJ found she was capable of performing work as a content checker, mail room clerk, and office helper. (*Id*., p. 35-36).

The Appeals Council denied Plaintiff's request for review on July 24, 2018. (*Id*., pp. 5-10). Plaintiff filed this action on August 31, 2018. (ECF No. 1). Both parties have filed appeal briefs (ECF Nos. 14, 15), and this matter is ready for Report and Recommendation.

---

[2] The temporomandibular joint is a sliding hinge that connects the jawbone to the skull. This disorder can cause pain in the jaw joint and muscles that control jaw movement. In most cases, the pain and discomfort associated with the disorder is temporary and can be relieved with self-managed care. *See* TMJ disorders, *at* https://www.mayoclinic.org/diseases-conditions/tmj/symptoms-causes/syc-20350941 (Last accessed June 10, 2019).
[3] "Eagle syndrome is characterized by recurrent pain in the middle part of the throat and face . . . typically seen in patients after throat trauma or tonsillectomy." Success rates for treatment is at approximately 80 percent. *See Eagle syndrome, at* https://rarediseases.info.nih.gov/diseases/9401/eagle-syndrome. (Last accessed June 10, 2019).

## II. Relevant Evidence

Plaintiff presents a history of mental and physical complaints dating from the late 1990's, when she was initially treated for feelings of tiredness, depression, and complaints of back pain. (EFC No. 11, p. 301). She also received estrogen replacement therapy due to ovary failure at the age of 26 (*Id.*, p. 301), and she was diagnosed and treated for clinical depression with underlying anxiety by Dr. Baker (*Id.*, pp. 304-306, 308). She continued to meet with Dr. Baker in the late 1990's and 2000's and was prescribed Xanax, Zoloft, and Paxil at differing times. (*Id.*, pp. 303-306, 308).

On September 23, 1998, Plaintiff self-initiated an increase in her Paxil and stopped taking Xanax. (*Id.*, p. 305). On February 19, 1999, she made another self-initiated adjustment, increasing her Estrace dosage, which she stated made her feel "much better." She was also doing "very well" on Paxil at that time. (*Id.*, p. 306).

In April 2000, Plaintiff stopped taking Estrace, Provera, and Paxil on her own, but Dr. Baker restarted her on a hormone regimen due to persistent hot flashes. (*Id.*, p. 311).

In 2009, Plaintiff went to Dr. Kareus for an evaluation of neck pain, which she claimed had been present for three years. (*Id.*, pp. 409-411). No bone or joint abnormalities were detected, although she did exhibit a decreased range of motion in the neck. This led Dr. Kareus to diagnose degenerative cervical spine disease, pending x-rays. (*Id.*, p. 411). At that time, Plaintiff exhibited a normal attention span with normal concentration, affect, and behavior. Physical therapy or chiropractic therapy was recommended, and Plaintiff was treated at Back in Action Chiropractic on numerous occasions in 2010 with mixed results. (*Id.*, pp. 409-449).

On November 12, 2013, Plaintiff saw Dr. Donald Chambers for an initial evaluation. (*Id.*, p. 451). She had a calcification in her neck and either mitral or aortic valve insufficiency. She

reported that her mind raced all the time, she experienced hot flashes, she was consistently late to work, and off work too often. She was considering quitting. Dr. Chambers prescribed Trileptal[4], advised her not to stop working, and stated he felt he could help her problems.

Between 2014 and 2017 Plaintiff went to Ozark Wellness Clinic where she was treated for a variety of impairments, including: anxiety; depression; stress; dizziness; pain in her back, shoulders, neck, temples, jawbone, head, teeth; and, numbness in her body and hands. (*Id*., pp. 331-354, 383-400, 454-468). At one of her most recent visits, on July 31, 2017, Plaintiff complained of chronic head, neck, and shoulder pain; muscle weakness; tenderness in the balls of her feet; and, dizziness. She admitted that foot massages and saltwater baths helped her feet, and Valium[5] was effective in treating her vertigo and Eagle syndrome symptoms. Because she did not have insurance, her pectus excavatum[6] could not be treated. Nurse Yvonia Finley noted it would eventually cause a cardiac issue and pressed the need for treatment. (*Id*., p. 456).

On May 22, 2015, Plaintiff went to Cooper Clinic for lab work where she complained of pain in her right flank, neck, and eyes with a swollen tongue. (*Id*., pp. 321-329). The doctor noted that her tongue appeared normal. She was assessed as having multiple myalgias and multiple arthralgias. (*Id*., p. 321).

On September 15, 2016, Plaintiff went to Sparks Ear, Nose, & Throat Center and met with Dr. Gary Highfill for an evaluation of her Eagle's syndrome. (*Id*., p. 367). They reviewed Plaintiff's chronic tension-type headaches, referred otalgia, essential hypertension, hypertensive

---

[4] Trileptal (oxcarbazepine) is a medication primarily used to treat seizures but is sometimes used to treat bipolar disorder. *See Oxcarbazepine, at* https://medlineplus.gov/druginfo/meds/a601245.html (Last accessed June 10, 2019).
[5] Valium (Diazepam) is primarily used to relieve anxiety, muscle spasms, and seizures. It can also treat panic attacks. *See* Diazepam, at https://medlineplus.gov/druginfo/meds/a682047.html (Last accessed June 10, 2019).
[6] *Pectus excavatum*, or funnel chest, is a condition in which a person's breastbone is sunken into her chest. It is often noticeable shortly after birth and severe cases can eventually interfere with heart and lung functioning. *See Pectus excavatum, at* https://www.mayoclinic.org/diseases-conditions/pectus-excavatum/symptoms-causes/syc-20355483 (Last accessed June 10, 2019).

disorder, mitral valve disorder, mitral valve regurgitation, mitral valve prolapse, sinus bradycardia, left ventricular diastolic dysfunction, TMJ, cervical disorder, elongated styloid process syndrome, heart murmur, chest pain/electrocardiogram abnormality, and history of palpitations. (*Id*.). Dr. Highfill noted she had previously undergone surgery to remove a ligament from her throat for Eagle's syndrome and this had gone well. (*Id*., p. 368). Aside from decreased range of motion and tenderness at the skull base, her physical exam was unremarkable. (*Id*., p. 369). Plaintiff was in no distress, exhibiting a normal affect and orientation. (*Id*.). Dr. Highfill noted he did not think Plaintiff had Eagle's syndrome and did not schedule Plaintiff for follow-up. (*Id*.).

Plaintiff completed a Function Report - Adult on August 14, 2016. (*Id*., pp. 249-256). She reported pain in the temples, neck, teeth, eyes, back leg, arm, jaws, and ribs; toes going numb; chronic fatigue; a leaky heart value; high blood pressure; dizziness; and, panic attacks. The only medication indicated was Diazepam (generic for Valium). Plaintiff reported no medication side effects. Her activities of daily living ("ADL's") included feeding the dogs and chickens, light housework, light yardwork, cooking, crafting, caring for her husband, working on the farm, caring for herself, growing a garden, fishing, singing, and swimming. Plaintiff stated she had increased her gardening and fishing activities since she could not work to put food on the table. She also went to the farmer's market on Wednesdays and Saturdays for four hours to make money, went shopping twice a week, and watched her grandchildren play sports. Oddly, she also indicated she was afraid to ride in a car, did not want to leave the house, and used a walking stick. Her husband's third-party report largely corroborated these statements, except her statement regarding the use of the walking stick. (*Id*., p. 229-238).

On October 27, 2016, Dr. Terry L. Efird administered a consultative mental diagnostic evaluation. (*Id*., pp. 378-381). Plaintiff denied any history of inpatient or outpatient mental health

services. (*Id*., p. 378). She admitted to taking less of Diazepam than was prescribed, denied any side effects, and characterized the medication as beneficial. (*Id*.). Plaintiff reported the ability to drive unfamiliar routes and to shop independently. (*Id*., p. 380). An ability to perform most ADL's adequately was described as "I get it done. My husband helps me." (*Id*., p. 379, 380). Dr. Efird concluded Plaintiff could perform the basic cognitive tasks required for basic work and had performed them adequately and timely during the evaluation. (*Id*., p. 381). He diagnosed major depressive disorder, moderate, in addition to panic disorder with agoraphobia. (*Id*., p. 380).

Additional medical records indicate a visit to the emergency department at Mercy Hospital Fort Smith on September 29, 2017. (*Id*., pp. 471-491). Plaintiff reported a headache of six hours duration with associated dizziness, neck pain, nausea, and back pain. She indicated that her symptoms were typically responsive to Valium. (*Id*., p. 471). Physical exam revealed normal findings. (Id., pp. 473-474). The clinical impression was migraine without status migrainosus, not intractable, unspecified migraine type, and dizziness. (Id., p. 477).

An MRI of Plaintiff's cervical spine on March 14, 2018 showed degenerative disc disease ("DDD") at C5-6 and C6-7 levels with mild bulging annuli, no signal abnormality in the cervical spinal cord, and mild canal stenosis. (*Id*., p. 16).

### III. Applicable Law

This Court's role is to determine whether substantial evidence supports the Commissioner's findings. *Vossen v. Astrue*, 612 F.3d 1011, 1015 (8th Cir. 2010). Substantial evidence is less than a preponderance, but it is enough that a reasonable mind would find it adequate to support the Commissioner's decision. *Teague v.* Astrue, 638 F.3d 611, 614 (8th Cir. 2011). We must affirm the ALJ's decision if the record contains substantial evidence to support it. *Blackburn v. Colvin,* 761 F.3d 853, 858 (8th Cir. 2014). As long as there is substantial evidence

in the record that supports the Commissioner's decision, the Court may not reverse it simply because substantial evidence exists in the record that would have supported a contrary outcome, or because the Court would have decided the case differently. *Miller v. Colvin*, 784 F.3d 472, 477 (8th Cir. 2015). In other words, if after reviewing the record it is possible to draw two inconsistent positions from the evidence and one of those positions represents the findings of the ALJ, we must affirm the ALJ's decision. *Id*.

A claimant for Social Security disability benefits has the burden of proving her disability by establishing a physical or mental disability that has lasted at least one year and that prevents her from engaging in any substantial gainful activity. *Pearsall v. Massanari*, 274 F.3d 1211, 1217 (8th Cir. 2001); 42 U.S.C. § 423(d)(1)(A). The Act defines "physical or mental impairment" as "an impairment that results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. § 423(d)(3). A Plaintiff must show that her disability, not simply her impairment, has lasted for at least twelve consecutive months.

The Commissioner's regulations require him to apply a five-step sequential evaluation process to each claim for disability benefits: (1) whether the claimant has engaged in substantial gainful activity since filing her claim; (2) whether the claimant has a severe physical and/or mental impairment or combination of impairments; (3) whether the impairment(s) meet or equal an impairment in the listings; (4) whether the impairment(s) prevent the claimant from doing past relevant work; and, (5) whether the claimant is able to perform other work in the national economy given her age, education, and experience. 20 C.F.R. § 404.1520(a)(4). Only if he reaches the final stage does the fact finder consider the Plaintiff's age, education, and work experience in light of her residual functional capacity. *McCoy v. Schweiker*, 683 F.2d 1138, 1141-42 (8th Cir. 1982),

*abrogated on other grounds by Higgins v. Apfel*, 222 F.3d 504, 505 (8th Cir. 2000); 20 C.F.R. § 404.1520(a)(4)(v).

### IV.     Discussion

Plaintiff raises two issues on appeal: (1) whether the ALJ's RFC determination is consistent with the record, and (2) whether Plaintiff can perform the jobs identified at step five.  (ECF No. 14).  After reviewing the record, the undersigned finds that the ALJ's decision to deny benefits is supported by substantial evidence.

#### A.     RFC Determination

Plaintiff contends the ALJ committed multiple errors in concluding Plaintiff could perform a limited range of light work, and that her findings do not comply with the law and are inconsistent with the facts of record.  (ECF No. 14, pp. 11-12).

RFC is the most a most a person can do despite that person's limitations. 20 C.F.R. § 404.1545.  "The ALJ determines a claimant's RFC based on all relevant evidence in the record, including medical records, observations of treating physicians and others, and the claimant's own descriptions of his or her limitations."  *Jones v. Astrue*, 619 F.3d 963, 971 (8th Cir. 2010); *Davidson v. Astrue*, 578 F.3d 838, 844 (8th Cir. 2009).  Limitations resulting from symptoms such as pain are also factored into the assessment.  20 C.F.R. § 404.1545(a)(3).  The United States Court of Appeals for the Eighth Circuit has held that a "claimant's residual functional capacity is a medical question."  *Miller*, 784 F.3d at 479 (citing *Lauer v. Apfel,* 245 F.3d 700, 704 (8th Cir. 2001).  Therefore, an ALJ's RFC determination must be supported by medical evidence that addresses the claimant's ability to function in the workplace.  *Perks v. Astrue*, 687 F.3d 1086, 1092 (8th Cir. 2012).  However, there is no requirement that an RFC finding be supported by a specific medical opinion.  *Hensley v. Colvin*, 829 F.3d 926, 931-32 (8th Cir. 2016); *Myers v. Colvin*, 721

8

F.3d 521, 526–27 (8th Cir. 2013) (affirming RFC without medical opinion evidence); *Perks*, 687 F.3d at 1092–93 (same).

Contrary to the Plaintiff's contention, the ALJ properly considered her dizzy spells. Although she claimed to experience dizziness 95% of the time, she also reported the ability to drive to work three times per week and work in her garden. (ECF No. 11, pp. 70, 73). She also admitted that her dizzy spells were controlled with Valium. (*Id.*, p. 70). *See Brown v. Astrue*, 611 F.3d 941, 955 (8th Cir. 2010) (holding an impairment that can be controlled by treatment or medication cannot be considered disabling). Accordingly, the evidence does not support Plaintiff's contention that her dizzy spells were disabling.

Additionally, physical exams conducted during the relevant period were essentially unremarkable, the majority of which revealed a normal range of motion in all areas examined and normal strength. Further, Dr. Highfill opined that Plaintiff did not suffer from Eagle's syndrome. Although Plaintiff did report some pain, there is no requirement that an individual be able to work pain free. *See Craig v. Apfel*, 212 F.3d 433, 436 (8th Cir. 2000) (holding that mere fact that working may cause pain or discomfort does not mandate a finding of disability). The ALJ, however, appears to have limited Plaintiff to light work based on her subjective complaints of pain. There is no evidence to otherwise indicate she was limited to light work. Thus, the contention that the ALJ "clearly underestimated Plaintiff's physical limitations" is without merit.

Plaintiff also argues the RFC does not properly account for her mental impairments. (ECF No. 14, pp. 13-14). It is noted that the evaluation of a mental impairment is often more complicated than the evaluation of a claimed physical impairment. *Andler v. Chater,* 100 F.3d 1389, 1393 (8th Cir. 1996). Dr. Efird, however, concluded Plaintiff had the ability to perform the cognitive tasks required for basic work activity within a reasonable period, and she had the ability to carry out

9

work tasks, learn, and recall in a work setting. Although she claims to have had some impairments in memory, her claims are not corroborated by the objective evidence of record as no memory impairments were noted on exam. Also, despite professing to be socially isolated and lacking the motivation to spend time with others, the ALJ noted that Plaintiff reported spending time with her grandson, caring for her disabled husband, helping others at the Farmer's Market, and she reported no difficulty getting along with others. (ECF No. 11, p. 29). Thus, the record supports the mental limitations assessed by the ALJ.

Further, the ALJ noted the conservative nature of Plaintiff's treatment. She was treated via medication and chiropractic treatment during the relevant time period. And, despite Plaintiff's argument that her inability to afford medical treatment was the reason for the conservative nature of her treatment, there is no evidence to indicate that Plaintiff was ever refused treatment or medication due to her alleged inability to pay. *See Milam v. Colvin*, 794 F.3d 978, 985 (8th Cir. 2015) (holding conservative treatment is inconsistent with disability); *Osborne v. Barnhart*, 316 F.3d 809, 812 (8th Cir. 2003) (discounting Plaintiff's argument he could not afford medical care because no evidence medical providers denied medical treatment). The medical evidence of record makes clear that Plaintiff's condition did not warrant surgical intervention.

The ALJ also properly considered Plaintiff's ADLs. By her own admissions, she is not disabled. (ECF No. 11, pp. 249-256). Due to her purported inability to work, Plaintiff admittedly increased her gardening and fishing activities "to put food on [the] table" and to sell at the Farmer's Market. She also cares for her disabled husband, feeds her dogs and chickens, and performs house and yard work. Her only medication was Valium (Diazepam), which she indicated was effective without side effects. Dr. Efird even noted she took less of the medication than was prescribed.

And, she described her ability to perform most ADL's as "I get it done." (*Id.*, pp. 379, 380). Plaintiff's testimony before the ALJ corroborated these statements. (*Id.*, p. 53-58).

Despite Plaintiff's protest, the ALJ properly considered that Plaintiff continued to work part-time after her alleged onset date. She continued to work as a substitute teacher, and she ran a booth at the Farmer's Market. Although she typically requests two and one-half to three days of work per week substitute teaching, Plaintiff explained she is not always able to go into work. (*Id.*, pp. 47-48). Other weeks, she takes her garden goods to the Farmer's Market to sell. (*Id.*, p. 58). She does not perform both jobs every week. (*Id.*, p. 59). Plaintiff argues that her ability to essentially perform part-time work when she feels like it does not evidence her ability to perform full-time work in a competitive work environment; however, even considering this in the light most favorable to Plaintiff, we find her continued employment to be inconsistent with her claimed disability. *See Curran-Kicksey v. Barnhart*, 315 F.3d 964, 969 (8th Cir. 2003) (holding that even part-time work is inconsistent with claim of disability); *see also Browning v. Sullivan*, 958 F.2d 817, 821 (8th Cir.1992) (same).

Additionally, her amended alleged onset date correlates to her seasonal job ending with a tax service, not to any change in her health or ability to work. (*Id.*, pp. 52-53). Plaintiff also filed for unemployment benefits, wherein she had to affirm her ability to work full time. (*Id.*, pp. 50-51). *See Milam v. Colvin*, 794 F.3d at 984 (finding admission of ability to work in connection with unemployment application inconsistent with disability application).

Thus, although the record indicates that Plaintiff experiences pain and certain mental disturbances, her own admissions contradict her claim of disability. Nothing within the record suggests an inability to perform the limited range of light work determined by the ALJ. And, the undersigned finds the ALJ's RFC determination to be supported by substantial evidence.

### B. Step Five Determination

In Plaintiff's second ground on appeal, she asserts she cannot perform the jobs identified by the ALJ at step five. The ALJ's hypothetical question to the vocational expert need only include those impairments the ALJ finds are substantially supported by the record as a whole. *Martise v. Astrue*, 641 F.3d 909, 927 (8th Cir. 2011) (citing *Lacroix v. Barnhart*, 465 F.3d 881, 889 (8th Cir. 2006)). Based on our previous conclusion that the ALJ's RFC findings are supported by substantial evidence, the hypothetical question was thus proper, and the VE's answer constituted substantial evidence supporting the Commissioner's denial of benefits. *Id.*

### IV. Conclusion

Based on the foregoing, I recommend affirming the ALJ's decision and dismissing the Plaintiff's Complaint with prejudice.

**The parties have fourteen (14) days from receipt of our report and recommendation in which to file written objections pursuant to 28 U.S.C. § 636(b)(1). The failure to file timely objections may result in waiver of the right to appeal questions of fact. We remind the parties that objections must be both timely and specific to trigger de novo review by the district court.**

DATED this 18th day of June 2019.

/s/ Mark E. Ford
HONORABLE MARK E. FORD
UNITED STATES MAGISTRATE JUDGE